**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| BRANDEN MCAFEE | : | |
| *Plaintiff*, | : | Case No. 1:25-cv-611 |
| vs. | : | Judge Jeffery P. Hopkins |
| CAPITAL ONE BANK N.A., | : | |
| *Defendant*. | : | |

# OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss the First Amended Complaint (Doc. 11) (the "Motion") filed by Capital One, N.A. ("Defendant" or "Capital One"). In the Motion, Capital One seeks dismissal of Plaintiff's Amended Complaint (Am. Compl., Doc. 10) filed by Branden McAfee ("Plaintiff" or "Mr. McAfee"), an unrepresented party, for failure to state a claim upon which relief may be granted. Mr. McAfee responded in opposition to the Motion (Doc. 12) to which Capital One replied (Doc. 14). For the reasons provided below, Capital One's Motion to Dismiss the First Amended Complaint (Doc. 11) is **DENIED**.

## I. BACKGROUND

Mr. McAfee is the holder of a Capital One Quicksilver credit-card ("Quicksilver Credit-Card") and requested a credit-limit increase in May 2025.[1] Am. Compl., Doc. 10, ¶ 8.

---

[1] For purposes of analyzing a motion to dismiss, the Court views as true all factual allegations stated in the Amended Complaint (Am. Compl., Doc. 10). *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

However, as opposed to receiving a credit-limit increase as requested, Mr. McAfee received a written letter from Capital One on May 3, 2025, denying his request, which provided, in relevant part:

> Dear [Mr.] McAfee,
>
> You recently requested a credit line increase for your Quicksilver Credit Card. Unfortunately, your account isn't eligible right now. We know this isn't the answer you were hoping for and we want to help you understand why:
>
> - The credit reporting agency has reported a *recent credit delinquency*
> - The amount of *revolving balance(s)* relative to the total credit limit reported to us by credit reporting agency
> - *Time since delinquency* is too recent or unknown
> - *Balance owed* on delinquent past or present credit obligation(s) is *too high*

Am. Compl., Doc. 10, Pl. Ex. 1, PageID 164 (emphasis added). In Mr. McAfee's view, Capital One's explanation for the denial was entirely deficient and the bank was obligated to provide a more detailed written explanation explaining the basis for its decision. Am. Compl., Doc. 10, ¶ 14. Mr. McAfee then mailed a response to the bank requesting "a more specific and detailed explanation in writing" as opposed to the allegedly "vague" reasons provided to him. Am. Compl., Doc. 10, Pl. Ex. 1, PageID 163 ("The reasons provided in your notice are vague and do not clearly identify what information or accounts led to your decision . . . [p]lease provide the exact and specific information from my credit report or other sources that formed the basis of your denial.").

On May 20, 2025, Capital One responded to Mr. McAfee in writing. Am. Compl., Doc. 10, Pl. Ex. 3, PageID 170. However, rather than offering the detailed account information requested, the bank instructed Mr. McAfee to simply give Capital One "a call" and provided a phone number for him to do so. *Id.* Once again, Mr. McAfee was left unsatisfied with Capital One's response. Am. Compl., Doc. 10, ¶¶ 36, 38.

Mr. McAfee filed suit against Capital One on June 12, 2025, in the Hamilton County Municipal Court. *See* Compl., Doc. 4. Capital One removed the action to Federal District Court on August 21, 2025. Doc. 1. Shortly thereafter, on October 22, 2025, Mr. McAfee filed an Amended Complaint (Am. Compl., Doc. 10) asserting one count against Capital One pursuant to the Equal Credit Opportunity Act (15 U.S.C. § 1691). Mr. McAfee asserts that Capital One failed to provide him with "any clear or specific written reason" for denying his credit-limit increase request and that the bank's failure "was willful and in reckless disregard of its statutory duties." Am. Compl., Doc. 10, ¶¶ 14, 46. On November 7, 2025, Capital One moved to dismiss Mr. McAfee's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Doc. 11. Mr. McAfee responded in opposition to the Motion (Doc. 12) to which Capital One replied (Doc. 14). The matter is now ripe for review.

## II. STANDARD OF REVIEW

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an

important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III. LAW AND ANALYSIS

Congress enacted the Equal Credit Opportunity Act ("ECOA" or the "Act") in 1974 to prohibit discrimination in credit transactions, particularly against married women "whom creditors traditionally refused to consider for individual credit." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 771 (6th Cir. 2005); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576 (6th Cir. 2016); *Dorton v. Kmart Corp.*, 229 F. Supp. 3d 612, 615 (E.D. Mich. 2017) ("The ECOA exists to prevent discrimination by creditors against certain classes of credit applicants.") (citing *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002)). Two years later, Congress amended the ECOA to require creditors to provide consumers with a statement of reasons when an adverse action such as a denial of credit is taken, with the goal of promoting consumer financial education. *See* 15 U.S.C. § 1691(d)(2); *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) ("[The Act] was amended in 1976 to require creditors to furnish written notice of the specific reasons why an adverse

action was taken against a consumer."). The statute, 15 U.S.C. § 1691(d)(2), provides in relevant part:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—
>
> (A) providing *statements of reasons in writing* as a matter of course to applicants against whom adverse action is taken; *or*
> (B) giving written notification of adverse action which discloses (i) the applicant's *right to a statement of reasons within thirty days* after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained.

*See* 15 U.S.C. § 1691(d)(2) (emphasis added). Importantly, as noted, the ECOA's statutory requirement that creditors disclose the reasons for an adverse action reflects Congress' broader goal of promoting consumer financial education. *See Williams v. MBNA Am. Bank, N.A.*, 538 F. Supp. 2d 1015, 1019 (E.D. Mich. 2008). Without such an explanation, consumers would be deprived of an opportunity to understand the reason behind the creditor's decision. In the U.S. Senate report on the 1976 amendments to the statute, Congress described the statutory purpose this way:

> [R]ejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S. Rep. No. 94-589, at 4 (1976); *Carr v. Cap. One Bank (USA) N.A.*, No. 1:21-cv-2300-AT-JKL, 2021 WL 8998918, at *3 (N.D. Ga. Dec. 8, 2021) (noting that the statement of reasons requirement "serves the broader purpose of allowing applicants 'to learn where and how their credit status is deficient.'") (citation omitted). To advance that broader purpose, the statement of reasons provided by a creditor must be "specific" and disclose the "principal reason(s) for

the adverse action." 12 C.F.R. § 1002.9(b)(2); *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 835 (11th Cir. 2025).

Here, Capital One moves to dismiss Mr. McAfee's Amended Complaint (Am. Compl., Doc. 10) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Doc. 11. Capital One argues that Plaintiff's Amended Complaint "fails to state an actionable claim" under the ECOA because (1) Capital One provided Mr. McAfee with a sufficient statement of reasons for its adverse action pursuant to § 1691(d)(2)(A), and (2) the ECOA does not impose an additional obligation that creditors provide a second statement of reasons, although alleged by Plaintiff. Doc. 11, PageID 172, 174–76. Mr. McAfee has filed a memorandum in opposition. *See* Doc. 12.

In the response and the Amended Complaint, he asserts that Capital One's adverse-action letter does not satisfy ECOA's requirement that a creditor provide a "statement of specific reasons" for the adverse action because Capital One provided "vague" reasons in its letter to Plaintiff and did not clearly identify what information or accounts led to the bank's adverse action decision. *See* Am. Compl., Doc. 10, ¶¶ 2, 9; Doc. 12, PageID 187. He further contends that, even if the initial notice was facially sufficient, Capital One committed a separate ECOA violation by failing to provide a written statement of reasons in response to his May 3, 2025, written request. Am. Compl., Doc. 10, Pl. Ex. 3, PageID 170; Doc. 12, PageID 189.

At this juncture, the Court must determine whether the factual allegations in Mr. McAfee's Amended Complaint (Am. Compl., Doc. 10) satisfy the plausibility standards set forth in *Twombly* and *Iqbal,* sufficient to withstand Capital One's motion to dismiss. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. To do so, Mr. McAfee's claim under 15 U.S.C. §

1691(d)(2) requires a showing that: (1) Mr. McAfee qualifies as an applicant as defined under the Act; (2) Capital One qualifies as a creditor as defined under the Act; (3) Capital One's refusal to increase Mr. McAfee's credit limit constituted an adverse action; and (4) Capital One failed to provide Mr. McAfee with a notice of that adverse action that complied with the ECOA. *See Dorton v. Kmart Corp.*, 229 F. Supp. 3d 612, 621 (E.D. Mich. 2017); *Carr*, 2021 WL 8998918, at *3. Because the parties do not dispute that Mr. McAfee is an applicant, that Capital One is a creditor, or that the credit denial by Capital One was an adverse action, the only element at issue is the fourth one: whether Capital One's notice issued on May 3, 2025, to Mr. McAfee complied with the ECOA.[2] For the reasons provided below, and because Mr. McAfee's Amended Complaint (Am. Compl., Doc. 10) includes "enough facts to state a claim to relief that is plausible on its face," Plaintiff's assertion that Capital One's notice failed to comply with the ECOA satisfies the plausibility standards set forth in *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

### A. *Mr. McAfee has plausibly shown that Capital One failed to provide him with an adverse action notice that complies with the ECOA.*

#### 1. 15 U.S.C. § 1691(d)(2)(A)

Mr. McAfee asserts in the Amended Complaint (Am. Compl., Doc. 10) that Capital One's May 3, 2025, denial letter (Am. Compl., Doc. 10, Pl. Ex. 1, PageID 164) failed to satisfy the ECOA's requirement that creditors state "*specific* reasons" for an adverse action. 15

---

[2] For purposes of the ECOA, a "creditor" is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). An "[a]dverse action" is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6); *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 835 (11th Cir. 2025). The term "'applicant' means any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

U.S.C. § 1691(d)(2)(A),(3); 12 C.F.R. § 1002.9(b)(2) (emphasis added); Am. Compl., Doc. 10, ¶ 14 ("Capital One has never provided any clear or specific written reason for the adverse action, depriving Plaintiff of the opportunity to understand or address the issue."). As noted, the denial letter provides the following, in relevant part:

> Dear [Mr.] McAfee,
>
> You recently requested a credit line increase for your Quicksilver Credit Card. Unfortunately, your account isn't eligible right now. We know this isn't the answer you were hoping for and we want to help you understand why:
>
> - The credit reporting agency has reported a *recent credit delinquency*
> - The amount of *revolving balance(s)* relative to the total credit limit reported to us by credit reporting agency
> - *Time since delinquency* is too recent or unknown
> - *Balance owed* on delinquent past or present credit obligation(s) is *too high*

Am. Compl., Doc. 10, Pl. Ex. 1, PageID 164 (emphasis added). According to Mr. McAfee, this letter used vague, boilerplate phrases without identifying "which delinquency, which balances, which obligations," or any specific account-level information tied to him. Doc. 12, PageID 187. The statute's implementing regulation, 12 C.F.R. § 1002.9, commonly referred to as "Regulation B," requires that a creditor's statement of reasons "be specific and indicate the principal reason(s) for the adverse action." *See* 12 C.F.R. § 1002.9(b)(2). Here, the Court's plausibility inquiry centers on the level of specificity required. Appendix C to Regulation B provides sample notification forms intended for use by creditors in notifying an applicant that an adverse action has been taken against them on a credit application. *See* 12 C.F.R. § Pt. 1002, App. C. These sample forms, together with the text of 15 U.S.C. § 1691(d)(2), Regulation B, and relevant case law, inform the Court's assessment of how specific a creditor's statement of reasons must be to pass muster under the ECOA's requirements. *Barat*, 127 F.4th at 836.

The sample forms provide that a creditor's adverse action notice may include, for example, the following: (1) "[p]oor credit performance with [a creditor]"; (2) "[d]elinquent past or present credit obligations with others"; (3) "[i]ncome insufficient for amount of credit requested"; and (4) "[n]umber of recent inquiries on credit bureau report" to name only a few of the examples provided. 12 C.F.R. § Pt. 1002, App. C. "A creditor may design its own notification forms or use all or a portion of the forms contained in th[e] Appendix." *Id.*

Turning to the case law interpreting these rules for guidance. The Sixth Circuit has yet to construe the provisions of the ECOA at issue in this dispute, so we look at the case law developed in appellate courts and our sister district courts. The Fifth Circuit provides our first look into the relevant law from the circuit courts. In a case called *Fischl v. Gen. Motors Acceptance Corp.*, the Fifth Circuit noted that substantial "reliance on [a] . . . sample checklist [can be] *manifestly inappropriate*," particularly when the notice provided to the consumer "fails to satisfy the informative purposes of the ECOA." *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 147–48 (5th Cir. 1983) (emphasis added). There, the plaintiff applied for credit from a dealership for a BMW automobile *Id.* at 145. About a week later, the plaintiff received a form letter from the dealership stating that his application had been denied because his "credit references [were] insufficient." *Id.* The plaintiff filed suit asserting that "the reason cited in [the] letter . . . [did] not afford notice of the actual grounds for the denial" in violation of the ECOA. *Id.* at 146.

The district court in *Fischl* had found that the dealership's statement pertaining to the denial of credit to that plaintiff was adequate because "the reason assigned therein was similar to one proposed in the Federal Reserve Board's (Board) model checklist." *Id.* at 145. The Fifth Circuit disagreed. According to the Fifth Circuit, the statement "credit references are

insufficient" given by the creditor refusing to extend credit was too generic to meet "the informative purposes of the ECOA." *Id.* at 148 ("Use of such generic descriptive terms as 'insufficient credit references' or 'insufficient credit file' are not sanctioned by these governmental entities absent an explanation by the creditor of the manner in which the credit reference or file was insufficient.").

Though the ECOA "does not require a creditor to provide *much* detail about the reasons underlying an adverse action" the information provided must meet the purposes of the ECOA to allow consumers to "be able to learn where and how their credit status is deficient" as emphasized by Congress in the 1976 amendments to the Act. *See* S. Rep. No. 94-589, at 4 (1976); *Copple v. S. Bank of Tenn.*, 2023 WL 2531728, at *4 (M.D. Tenn. Mar. 15, 2023) (citation omitted and emphasis added). To provide further example, in *Copple*, a decision from a district court within our Circuit, the plaintiff asserted that the Southern Bank of Tennessee violated the ECOA by providing him with an adverse action notice, which stated only that the bank did "not grant credit under [the] terms and conditions requested." *Copple*, 2023 WL 2531728, at *1. While acknowledging that the ECOA does not require much detail in notices, the court denied the creditor's motion to dismiss because, among other reasons, the notice appeared to contravene the ECOA "on its face" by failing to specify "what that policy [was] or why it applied" at all. *Id.* at *4.

At this juncture, the only question for this Court is whether Mr. McAfee has properly asserted a claim for relief under § 1691(d)(2) of the ECOA such that it satisfies *Twombly* and *Iqbal*. Plausibly, he did. The four reasons listed in Capital One's adverse action notice—(1) "[t]he credit reporting agency has reported a recent credit delinquency"; (2) "[t]he amount of revolving balance(s) relative to the total credit limit reported to us by [the] credit reporting

agency"; (3) "[t]ime since delinquency is too recent or unknown"; and (4) "[b]alance owed on delinquent past or present credit obligation(s) is too high" share a common theme: they all speak in generalized terms about delinquency, but do not identify any specific account or creditor that would, on its face, allow Mr. McAfee to "learn where and how [his] credit status is deficient." S. Rep. No. 94-589, at 4 (1976); Am. Compl., Doc. 10, Pl. Ex. 1, PageID 164. At this stage, the *where* component of the ECOA's requirements appears to be missing, and the bank's phrasing, particularly "time since delinquency is too recent or unknown," mirrors the sort of vague and generic language the Fifth Circuit rejected in *Fischl*. 708 F.2d at 148.

The Court notes, however, that there are court decisions leaning in the opposite direction from the conclusion reached by the Fifth Circuit in *Fischl*. Nevertheless, scrutiny of those decisions and the rationale expressed by those courts, we believe, still counsels against dismissing the Amended Complaint in the instant case at the early pleading stages. *Barat*, 127 F.4th at 836; *Carr*, 2021 WL 8998918, at *8. Both *Carr* and *Barat* are distinguishable from the case at bar based on the allegations contained in Plaintiff's Amended Complaint. By way of example, the court in *Carr* upheld Capital One's statement that it closed the plaintiff's account because it had "discovered adverse past or present legal action involving an individual or entity associated with the account." *Carr*, 2021 WL 8998918, at *7–9. The *Carr* court expressly relied on the sample notification forms in Regulation B and concluded that there was "no meaningful distinction" between "discovered adverse past or present legal action" to the simplified language used in the model forms. *Id*. According to the court in *Carr*, the follow-up questions the plaintiff would have asked of the creditor regarding the notice he received—specifically whether the legal action was pending or concluded, who the parties were, and the nature of the suit—would have arisen in the case "to the exact same" extent as if the creditor

had simply used the model reason "collection action or judgment." *Id*. On that basis, the *Carr* court found that the plaintiff's notice was ECOA-compliant and dismissed the complaint.

As noted, the *Carr* decision takes a very different approach to the ECOA's requirements on notice to consumers than the Fifth Circuit's conclusion in *Fischl,* where the court reasoned that substantial "reliance on [a] . . . sample checklist [can be] manifestly inappropriate," particularly when the notice provided to the consumer "fails to satisfy the informative purposes of the ECOA." *Fischl*, 708 F.2d at 147–48. Nonetheless, the Court is persuaded that Plaintiff's allegations in the case before it are more closely aligned with those expressed in *Fischl* than the ones dismissed in *Carr* and *Barat*.

Here, Mr. McAfee has plausibly shown that the notice he received from Capital One failed to inform him in the manner contemplated under the ECOA. In *Barat*, the Eleventh Circuit emphasized that that the plaintiff's own complaint clearly demonstrated that he *knew* Navy Federal was holding him responsible for *specific unpaid charges* and that the plaintiff understood that he could attempt to remediate the issue through the creditor's appeals process. *Barat*, 127 F.4th at 837. His awareness was part of the court's rationale for affirming dismissal of the plaintiff's complaint. *Id.* Here, Mr. McAfee pleads the opposite: he has no idea which account or obligation Capital One is referring to and cannot tell whether the supposed delinquency involves his Capital One Quicksilver Credit-Card or an account with some other creditor. Am. Compl., Doc. 10, Pl. Ex. 1, PageID 163 ("The reasons provided in your notice are vague and do not clearly identify what information or accounts led to your decision . . . [p]lease provide the exact and specific information from my credit report or other sources that formed the basis of your denial."). Taken together, and viewed in the light most

favorable to Plaintiff, these factors all tip the balance toward plausibility at the motion to dismiss stage.

2. 15 U.S.C. § 1691(d)(2)(B)

Separately, Mr. McAfee alleges that after receiving Capital One's adverse action letter on May 3, 2025, he requested in writing that Capital One provide the specific reasons for denying his credit-limit increase. *See* Am. Compl., Doc. 10, Pl. Ex. 1, PageID 163. However, rather than offering the detailed account information requested, on May 20, 2025, Capital One instructed Mr. McAfee to simply give Capital One "a call." Am. Compl., Doc. 10, Pl. Ex. 3, PageID 170. Conversely, Defendants assert, "[c]ontrary to Plaintiff's contention, there is no obligation—anywhere—to provide a second additional statement of reasons" under the ECOA and that the notice provided on May 3, 2025, satisfied Capital One's obligation to provide a statement of reasons to Mr. McAfee. Doc. 14, PageID 198. As previously noted, 15 U.S.C. § 1691(d)(2), provides in relevant part:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—
>
> (A) providing s*tatements of reasons in writing* as a matter of course to applicants against whom adverse action is taken; *or*
> (B) giving written notification of adverse action which discloses (i) the applicant's *right to a statement of reasons within thirty days* after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained.

*See* 15 U.S.C. § 1691(d)(2) (emphasis added). Importantly, "[s]ubsections 1691(d)(2)(A) and 1691(d)(2)(B) are . . . alternative manners by which a creditor can ensure its compliance with the applicants' statutory entitlement to a statement of reasons." *Magazin v. Cyprus Credit Union, Inc.*, No. 2:15-cv-00234-DBP, 2016 WL 2903223, at *4 (D. Utah May 17, 2016). As a result, the two subsections "cannot be read as cumulative requirements because they are separated

by the word 'or.'" *Id*. Rather, the word "or" requires that Capital One satisfy either subsection—(A) or (B). Put differently, a creditor's satisfaction of one of the two subsections meets the requirements of the ECOA.

Here, however, it is plausible that Capital One satisfied neither requirement. As to subsection (B), Capital One has essentially admitted that it did not meet or try to meet the requirements of that subsection because, in its view, the bank had already provided Mr. McAfee with "an ECOA-compliant statement of reasons" pursuant to subsection (A), as opposed to subsection (B). Doc. 14, PageID 198 ("By including the statement of reasons in the adverse action notice itself, Capital One complied with Subsection 1691(d)(2)(A)."). However, the Court earlier addressed Mr. McAfee's allegations as to subsection (A) and found that his allegations are plausible. Consequently, it is plausible that Capital One failed to provide Mr. McAfee with a notice that complied with subsection (B) of the statute, given the allegations in Plaintiff's Amended Complaint and Capital One's response essentially acknowledging that the requirements of subsection (B) were not met. *Id*. Drawing all reasonable inferences in Mr. McAfee's favor, as we must, he has provided sufficient "facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## IV. CONCLUSION

For the reasons provided, Capital One's Motion to Dismiss the First Amended Complaint (Doc. 11) is **DENIED**.

**IT IS SO ORDERED.**

August 31, 2026

Jeffery P. Hopkins
United States District Judge